DeCARLO, Judge.
After a guilty plea, appellant was convicted of forgery in the second degree and sentenced to two years. The trial judge *904 ordered that appellant serve four months in the penitentiary, suspending the remainder of the sentence and allowing the appellant to be placed on probation. He also ordered that restitution in the amount of $37,000. be made.
The trial court explained to the appellant all of the rights he would relinquish by pleading guilty, as required by Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The following then occurred:
“THE COURT: Are you pleading guilty voluntarily and of your own free will and accord?
“MR. YAMADA: Yes, Your Honor.
“THE COURT: Are you pleading guilty because you are, in fact, guilty of the offense with which you are charged in the indictment?
“MR. YAMADA: No, Your Honor. I am not pleading guilty because I am guilty. I maintained that I had no criminal intent and I’m not guilty; however, I acknowledge that I did supply the endorsement of W.R. Inman to the check which was presented to the Northeast State Bank. I have never tried to hide that fact, but, Your Honor, I did not attempt to copy or make the signature look like that of W.R. Inman. I supplied that endorsement on the instructions of the owner of the funds who was my then employer, who stated that W.R. Inman was not entitled to the funds. He further instructed me to supply the endorsement. I believed he had the authority to ask me to do that. I again state I am willing to make complete and total restitution to any party who lost money because of my action. I am pleading guilty as a compromise and in order to avoid the expense and possible more serious consequence which might occur as a result of a trial. “THE COURT: All right, is the State in the position to make a showing as to what the evidence in this case would be? “MR. IGOU: I believe so, Your Honor. Judge, the State would expect to show, through its witnesses and testimony in evidence, that some meetings occurred prior to July, or prior to, at least, July 13, 1979, between Mr. Yamada and some of his associates and Mr. W.R. Inman of Higdon, Alabama, Jackson County, Alabama, and his associates regarding some coal property, and we expect to show that an agreement was reached for the payment of $75,000 to Mr. Inman and/or his associates for a coal mine which was in existence at that time. We expect to show that on or about the 13th of July, 1979, that the defendant called Mr. In-man and said he had his money, and that he was at the Atlanta Airport and he would call later to make arrangements to deliver the money. We expect to show that there was a meeting on the next day arranged, and it was at the office of Mr. Morris Beck, Mr. W.M. Beck, Sr’s son and law partner. That that meeting was held the next day and that the witness, Mr. Inman, was offered less than the $75,000 agreed upon consideration, and that he refused that offer and said that there was no deal at that time. We expect to show also that on or about the 13th of July, 1979, that Mr. Yamada and an associate of his at that time, one George Hambert, went to the Northeast State Bank at Henagar, here in DeKalb County; that Mr. Yamada had in his possession at that time a $75,000 cashiers check. Furthermore, we expect to show that he deposited this check with the endorsement of W.R. Inman on the check to a new account that was opened by Mr. Ya-mada and Mr. Hambert, in the name of Midnight Coal Company. We expect to show further that Mr. Inman will testify that he never endorsed that check and he did not endorse anyone, or did not authorize anyone to endorse his name on the check. We expect to show that Mr. Ya-mada made the statement, or made a statement, under the proper Miranda warning, to the fact that he did sign the name, W.R. Inman, on the check. Further, we would expect to show that on or about the 15th of July, the Northeast State Bank from the account of Midnight Coal Company; that one cashiers check was made payable to Mrs. Yamada, She *905 lia Yamada, in the amount of $10,000, and was later deposited to her own account at Central Bank of Alabama, in Fort Payne, and another cashiers check drawn on that account was made payable to Mr. Jimmy Lindsey, the Clerk of the Court, here in DeKalb County, for payment of an action which Mr. Yamada owed the Court; and the third check was in the amount of $4,000, and it went to Mr. George Hambert, and on July 16 it was deposited to his account in Central Bank, and on the same day he wrote a check to Mrs. Yamada in the amount of $4,000, and on that date Mrs. Yamada paid some $13,600 to a real estate firm here in Fort Payne. That, basically, is what the State expects to show.
“THE COURT: All right. The Court finds that there is a basis of fact upon which to support the guilty plea, and the Court will accept the plea of guilty. In view of everything that has been stated, Mr. Yamada, and the things that I have explained to you, do you still wish to enter your plea of guilty in this case?
“MR. YAMADA: Yes, Your Honor. “THE COURT: The Court adjudges you guilty of the offense of forgery in the second degree as charged in the indictment. ...”
After sentencing, appellant filed a motion to withdraw his guilty plea, which was denied by the court. In our judgment, appellant’s cause must be remanded because the above quoted portion of the record demonstrates that the procedure used in North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), was not followed.
In Alford, supra, the United States Supreme Court held that a guilty plea, entered over the accused’s protestations of innocence, was valid as long as the accused was represented by competent counsel and the evidence strongly supported his guilt.
After the accused in Alford claimed he was innocent of murder, the trial court heard the actual testimony of State’s witnesses which pointed strongly to the defendant’s guilt. The Supreme Court observed:
“If Alford’s statements were to be credited as sincere assertions of his innocence, there obviously existed a factual and legal dispute between him and the State. Without more, it might be argued that the conviction entered on his guilty plea was invalid, since his assertion of innocence negatived any admission of guilt, which, as we observed last Term in Brady, is normally ‘[cjentral to the plea and the foundation for entering judgment against the defendant * * *.’ 397 U.S. at 748, 90 S.Ct. at 1468.
“In addition to Alford’s statement, however, the court had heard an account of the events on the night of the murder, including information from Alford’s acquaintances that he had departed from his home with a gun stating his intentions to kill and that he had later declared that he had carried out his intention. Thereupon, with the State’s telling evidence and Alford’s denial before it, the trial court proceeded to convict and sentence Alford for second-degree murder.”
In the present case, appellant admitted that he supplied the endorsement, but denied criminal intent. He contended that he signed the check on the instructions of his employer, whom he believed was authorized to issue such instructions. The trial judge then listened to the State’s offer of proof and adjudged appellant guilty.
Section 13-4^61 of the Alabama Code 1975, the statute under which appellant was convicted, provides, in pertinent part, the following:
“Any person who, with intent to injure or defraud, falsely makes, alters, forges, counterfeits or totally obliterates any ... instrument, being or purporting to be the act of another, by which any right or interest in property is, or purports to be transferred, conveyed, or in any way changed or affected; ... is guilty of forgery in the second degree.” [Emphasis added]
Intent to defraud is necessary to constitute the crime, Espalla v. State, 108 Ala. 38, 19 So. 82 (1896), but intent may be *906 presumed from the forgery itself in the absence of proof to the contrary. Hall v. State, 21 Ala.App. 476, 109 So. 847 (1926).
The State’s offer of proof in support of the plea showed not only the false indorsement, but also a subsequent diversion of the funds for appellant’s benefit. From these proposed facts, a presumption of fraudulent intent undoubtedly may have arisen. However, appellant’s explanation of his conduct provided a possible defense (albeit implausible) to the crime charged, which was arguably “proof to the contrary.” See Hall v. State, supra.
In contrast to Alford, here the State presented no evidence to support appellant’s guilt. Assertions of counsel are not evidence, and an offer of proof is not sufficient, especially when the accused maintains his innocence.
We therefore hold that the proposed evidence recounted by the district attorney did not comply with the procedure used in Alford. In our judgment, once an accused protests his innocence, the court must, in order to determine whether there is a “factual basis for the plea,” Alford, supra 400 U.S. at 37, 91 S.Ct. at 167, require the State to present its case in the form of legal evidence to the trial court. A mere offer of proof simply cannot overcome the accused’s assertion of innocence or provide the “strong evidence of actual guilt,” Alford at 37, 91 S.Ct. at 167, necessary to acceptance of a plea which is coupled with a claim of innocence.
Therefore, we remand this cause to the DeKalb Circuit Court for compliance under the principles outlined in this opinion. Further, we ask the DeKalb Circuit Court, within a reasonable time, send this court a record of its proceedings complying with the foregoing order.
REMANDED WITH DIRECTIONS.
HARRIS, P.J., and TYSON and BOWEN, JJ., concur.