**KENTUCKY BAR ASSOCIATION,**
Movant,

v.

**Gregory A. COLSTON, Respondent.**

**No. 2001–SC–0427–KB.**

Supreme Court of Kentucky.

Sept. 27, 2001.

---

### *OPINION AND ORDER*

Gregory Colston was admitted to practice law in the Commonwealth of Kentucky in April 1986. The Kentucky Bar Association has now charged Colston with violations of SCR 3.130–8.3(b) and (c) after he entered guilty pleas to four amended counts of harassing communications and ten amended counts of violating a protective order. Colston received a probated sentence on these charges. The criminal charges arose from Respondent's telephone and written communications with

his former girlfriend, both before and after the issuance of a Domestic Violence Order. Specifically, Respondent made some 50 telephone calls to his former girlfriend between 9/25/97 and 10/19/97, and sent her two anonymous letters.

SCR 3.130–8.3 provides in relevant part as follows:

It is professional misconduct for a lawyer to:

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; [or]

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]

The Kentucky Bar Association charges that Respondent violated SCR 3.130–8.3(b) when he committed the criminal acts to which he later pled guilty, and that he violated SCR 3.130–8.3(c) when he wrote the anonymous letters to his ex-girlfriend intending to deceive her as to the identity of the writer. The anonymous letters were written as if by a mutual friend of Colston and his ex-girlfriend, in an attempt to reunite the couple.

Colston admits the charges against him, but in mitigation, argues that his behavior was caused by improperly prescribed and/or improperly monitored medication. At the time of the incidents herein, Respondent was treating with a Dr. McGrath, who, pursuant to a diagnosis of depression, and later bipolar disorder, had prescribed Paxil, and eventually Prozac and Lithium. Respondent asserts that he experienced a number of negative side effects from the medication, which he reported to Dr. McGrath. His symptoms included severe sleep disturbance, loss of memory, anger control problems, and later, slurred speech and an unsteady gait, all of which Dr. McGrath apparently regarded as normal. Colston eventually sought treatment in the emergency room of St. Elizabeth's Hospital, where he was found to be suffering from Lithium toxicity. The events at issue here occurred several months after the Lithium toxicity was discovered and Respondent's Lithium dosage was significantly reduced. Respondent asserts that the reduction in Lithium made the effects of the Prozac more pronounced and this led to his erratic behavior toward his former girlfriend. Respondent also admitted to prior drug and alcohol abuse, but maintains that he no longer uses either and is now very active in Alcoholics Anonymous.

Colston underwent a psychiatric evaluation by Dr. Robert Granacher on 3/9/99. Dr. Granacher diagnosed alcoholism and polysubstance abuse, both in remission by self report; probable attention deficit disorder with hyperactivity, life long; and a past history of depression with an equivocal history of bipolar illness. Dr. Granacher stated:

In my opinion, during the time period in question before the Kentucky Bar Association, you were demonstrating what is known as "behavioral toxicity" due to side effects from your medications. But for the alteration of your mental state by medication, and but for the probable acceleration of your mental state by Prozac or Paxil, you are not likely to have engaged in the types of behaviors you demonstrated during the time period at issue with the Kentucky Bar Association.

In summary, I do believe you had a substantial alteration of mental status due to the effects of the antidepressants, Paxil and Prozac, and you had substantial behavioral toxicity from toxic levels of lithium. There is evidence in the medical records you supplied me that the monitoring of your serum lithium level was not within accepted standards and not done in a timely fashion when

you demonstrated mental alterations from excessive lithium.

Granacher report, pg. 23. At oral argument before the Board of Governors, Respondent specifically accepted the recommendations of counsel for the Bar Association, which recommendations were followed by the Board of Governors. We also agree with those recommendations. Accordingly, it is Ordered that:

1. Respondent shall receive a public reprimand and a six-month suspension from the practice of law, probated for two years on the following conditions:

(a) The Respondent shall continue to undergo mental health treatment on a monthly basis;

(b) The Respondent's treating mental health professional, as approved by the Executive Director of the Kentucky Bar Association, shall provide quarterly reports to the Kentucky Bar Association indicating that he is continuing his mental health treatment.

(c) The Respondent shall submit to the supervision of an attorney, as approved by the Executive Director of the Kentucky Bar Association, the terms of said supervision to be equivalent to those set out in *Kentucky Bar Association v. Rankin*, Ky., 862 S.W.2d 894, 895–96 (1993);

(d) The Respondent shall pay all costs associated with the investigation and proceedings of KBA File 6714, in accordance with SCR 3.450, which now totals $794.65;

(e) In the event that Respondent violates the terms of the Order within two years of the date of the Order, the Kentucky Bar Association may file a motion with the Supreme Court requesting the issuance of a Show Cause Order directing the Respondent to show cause, if any, why the six-month suspension should not be imposed; and

(f) Finally, at the expiration of the probation period of two years, and in the event of the Respondent's full compliance with its terms, the Order of Suspension shall be terminated and the designated mental health professional and the designated supervising attorney shall be discharged from any further responsibilities under this Order.

All concur.

Dated: September 27, 2001.

/s/ <u>Joseph E. Lambert</u>
    Chief Justice