**KENTUCKY BAR ASSOCIATION, Movant,**

v.

**Sheridan MARTIN, Respondent.**

**No. 2006–SC–0353–KB.**

Supreme Court of Kentucky.

Nov. 22, 2006.

*OPINION AND ORDER*

The Board of Governors ("Board") of the Kentucky Bar Association ("KBA") has recommended to this Court that Sheridan Martin, who was admitted to practice law in Kentucky in May 1993, whose Bar Roster Address is P.O. Box 777, 5 Court Street, Allen, Kentucky 41601, and whose KBA Member Number is 84699, be suspended from the practice of law in Kentucky for two years, with 181 days to serve and the remainder probated upon rein-

statement with certain conditions. On May 16, 2005, the Board tendered its Findings of Fact, Conclusions of Law, and Recommendation related to two disciplinary cases (KBA File Nos. 7839 and 10898) against Martin. Martin subsequently filed a timely notice pursuant to SCR 3.370(8) for the Court to review the Board's findings and recommendation. Having reviewed the parties' briefs and the record, we conclude that the discipline recommended by the Board was insufficient in light of the egregiousness of Martin's behavior and impose a different sanction.

The first disciplinary case, KBA File No. 7839, rose from a criminal conviction for the sexual assault of one of Martin's female employees that occurred on December 13, 1999. Martin was at home, rather than work, because of an alleged back ailment. The employee went to Martin's home to deliver mail from the office. She testified that she was apprehensive because Martin had previously made inappropriate and unwelcome sexual comments to her and another employee and had touched their backs, knees, and hair. When the employee arrived at Martin's home, he was wearing jogging pants and a t-shirt. He asked the employee to come into another area of the house, which turned out to be a bedroom, because he was "down in his back." When the employee entered the bedroom, Martin grabbed her hair and then forced her right hand into his pants and against his penis. A small struggle ensued, during which Martin threw the employee on the bed, climbed on top of her, and forcefully tried to kiss her. The employee's pager went off, and Martin stopped his conduct, apparently alarmed by the sound. The employee said that the page was an emergency call from her son's school. Martin unlocked his front door and the employee left.

Following the incident, the employee contacted the County Attorney. She left Martin's employ soon thereafter (as did the other female employee who had been subjected to Martin's inappropriate behavior in the office). Investigators from the Commonwealth's Attorney's office investigated the crime and obtained tape-recorded statements from Martin wherein he admitted his inappropriate conduct. Martin was indicted for First–Degree Sexual Assault, a class D felony. Martin subsequently entered into a plea agreement wherein the charge would be reduced to Third–Degree Sexual Assault, a class B misdemeanor. The final judgment of conviction was entered on January 24, 2001. Martin was sentenced to 90 days in jail, probated for two years on several conditions, including that he continue good behavior, refrain from further violations of the law, complete community service, have no contact with the victim, and complete a counseling program.

There was also evidence that less than one month after this conviction, Martin made inappropriate sexual advances toward a female nurse at the nursing home where his mother lived. The nurse claimed that Martin put his hands on her waist, rubbed his "front side against [her] back side," and commented on her looks. This incident led the prosecutor to move to revoke Martin's probation. The trial court denied this motion, noting that while the behavior was inappropriate, it fell into the category of bad behavior only marginally.

The second disciplinary case, KBA File No. 10898, rose from another criminal conviction, this time for the sexual assault of a former client on April 27, 2001, less than three months after the initial conviction. Martin had previously represented the woman in a personal injury claim. At the time of the sexual assault, the woman was seeking Martin's legal counsel regarding a

social security claim for her minor son. While behind closed doors in his office, Martin flirted with the woman, then exposed his genitals and began masturbating in her presence. He approached her and placed his genitals against her. He then locked the door and began fondling, embracing, and kissing the woman. Martin's conduct was interrupted when an employee knocked on his door.

Martin acknowledged that he had sexual contact with the woman, stating that he initiated the flirting, which progressed to kissing and then to oral sex being performed on him. However, Martin claims that the encounter was consensual, though he admits that it was ethically inappropriate.

Martin was subsequently charged with Third–Degree Sexual Abuse and Second–Degree Unlawful Imprisonment. He entered a plea to Third–Degree Sexual Abuse pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). He was sentenced to thirty days in jail, probated for two years on the condition that he commit no further crimes, continue psychological therapy, and have no contact with the victim.

The KBA initiated disciplinary proceedings against Martin, and in April 2004, the Inquiry Commission issued two formal charges against him for violating SCR 3.130–8.3(b) for having "[c]omit[ted] a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." The charges were referred to a trial commissioner, who heard evidence and rendered findings of fact, conclusions of law and a recommendation.

The trial commissioner's findings of fact lay out the facts related to Martin's criminal acts and convictions in substantially the same manner as described above. Those findings also indicated that Martin

continued to practice law after his convictions. They also describe Martin's psychological counseling. He began seeing Bill Jett, a licensed clinical social worker and psychotherapist, in November 2000. Following the April 2001 sexual assault incident, Jett recommended that Martin attend the Santé Center for Healing, an inpatient mental health facility in Denton, Texas, that specializes in treating professionals with sexually-related mental disorders. Martin attended the Santé Center from May 18, 2001 to July 1, 2001. He left against the recommendation of the facility, allegedly due to the unavailability of funds to cover further treatment. The Santé Center's records indicate that Martin "still has a lot of work to do in all the problem areas of his treatment plan." Martin subsequently received outpatient treatment through the Baptist Hospital East in Louisville, Kentucky, and continued counseling and treatment with Bill Jett. He also participated in the Hebron Ministries Addiction Support Program in Pikeville, Kentucky.

Bill Jett testified that there had been gaps in Martin's treatment, but that he had been following up with his therapy and was taking anti-depressant medication for his condition as recommended by his psychiatrist, Dr. Douglas Ruth. He also noted that Martin had instituted strict controls in his office and that there had been no indication of recurrence of any inappropriate behavior. Finally, Jett testified that Martin had not yet reached a "maintenance level" in his therapy and would require continued therapy for his "sexual addiction."

The trial commissioner's findings also discuss Martin's relationship with Bill Baird III, an attorney in Pikeville, Kentucky. Martin had worked as a law clerk for Baird while attending law school. Baird and Martin had a chance meeting in

2002. During that meeting, the men discussed Martin's mental, emotional, and spiritual health. Baird then introduced Martin to the Hebron Ministries program, which Baird had established in the Pikeville area. Baird testified that Martin had effectively and continuously participated in the program and had reestablished a credible position as a practitioner in his community. Baird also testified that he would have no hesitancy in referring a client to Martin and that he would be willing to act as Martin's mentor if requested by the KBA.

The trial commissioner's report also describes the testimony of Molly Rader, one of Martin's current employees. She testified favorably about the current manner in which Martin conducts his office, noting that there are no inappropriate sexual comments or physical contacts. She also described Martin as a wonderful employer who treats his employees well.

The trial commissioner noted that Martin's guilty pleas, including the *Alford* plea, constituted proof of guilt of ethical violations in the disciplinary proceedings. The commissioner also found that the other testimony and evidence proved Martin's ethical violations beyond a preponderance of the evidence.

As a preface to his recommendation, the trial commissioner noted that Martin's behavior had been egregious, would have a long-lasting adverse emotional effect on the victims, demonstrated an inappropriate leverage of power and authority over an employee and a client, and had cast the legal profession in an unfavorable light. He also noted that the gaps in Martin's therapy and his leaving of the Santé Center against the recommendation of the facility indicated that the genuineness of his efforts was suspect. The commissioner was also concerned that Martin's efforts to seek treatment were motivated more by

his pending Bar complaints than his actual need for treatment. Nonetheless, the commissioner found that Martin's efforts were primarily a good faith attempt to address his mental health issues.

In light of this, the trial commissioner recommended that Martin be required to undergo aggressive therapy, with supervision by the KBA, for at least two more years. The recommended required therapy included weekly group therapy sessions through Hebron Ministries or another equivalent organization, weekly individual therapy sessions specialized for sexual addictive behavior through Mr. Jett or another equivalent healthcare provider, and regular follow-ups with Dr. Ruth or another psychiatrist for medication control for Martin's depression and other mental issues. The commissioner also recommended that Martin be required to continue the utilization of office controls that he has instituted subject to monitoring by the KBA consisting of the utilization of a taped monitoring surveillance system to be utilized particularly when counseling female clients with tapes to be maintained by the office manager or other member of the practice beyond control of Martin, and the continued utilization of an office procedure wherein Martin would have a female employee present whenever Martin is consulting with a female client or the maintenance of an open door to his office when interviewing a female client. The commissioner also recommended that Martin be directed to avoid making any inappropriate sexual comments, remarks, or innuendos to any female, or otherwise engage in any other inappropriate non-invited or non-consensual sexual activity with a female during the course of his probation, and that he not engage in any further conduct resulting in criminal or disciplinary charges.

The commissioner also indicated that a period of suspension was necessary in light of the gravity of the offenses and the fact that they represented a pattern of conduct, rather than an isolated incident. Thus, the commissioner recommended that Martin be suspended from the practice of law in Kentucky for two years, with at least 181 days to serve with the remainder probated upon reinstatement on the condition that he comply with the recommended course of treatment described above. The trial commissioner also recommended that William Baird III be designated as the Mentor representative of the KBA during the course of Martin's probationary period to ensure that Martin complies with the Board's mandates in this regard.

The Board of Governors voted to adopt the trial commissioner's findings of fact, conclusions of law, and recommendation by a vote of thirteen to six.

Martin seeks review of the Board's decision on the grounds that the Board's decision is not in conformity with this Court's decisions in similar disciplinary cases and does not adequately reflect the full factual circumstances surrounding his behavior, specifically his mental health and sexual addiction problems.[1]

Martin cites three Kentucky cases, *Kentucky Bar Association v. Colston*, 54 S.W.3d 158 (Ky.2001), *Kentucky Bar Association v. Rankin*, 862 S.W.2d 894 (Ky. 1993), and *Kentucky Bar Association v. Dunn*, 965 S.W.2d 158 (Ky.1998), for the proposition that the recommended discipline in this case is too harsh.[2] He argues that in cases involving addiction and mental health issues, lesser sanctions are called for. In essence, he argues that any discipline should focus on making sure that his mental health issues are treated.

In *Colston*, the attorney was convicted of several misdemeanor counts of harassing communications and violating a DVO. There was evidence that the attorney had a drug and alcohol abuse problem, and suffered from depression and bi-polar disorder. He was given a public reprimand and a probated six-month suspension from the practice of law.

In *Rankin*, the attorney was convicted of several misdemeanors, including second-degree wanton endangerment and fourth-degree assault. There was also evidence related to several DUI charges. That attorney was given a six-month suspension, probated for two years on the condition that he comply with a variety of conditions related to treatment of alcohol addiction.

In *Dunn*, the attorney pled guilty to five misdemeanors, one count of DUI and four counts of second-degree wanton endanger-

---

1. Martin also complains that an *Alford* plea does not constitute an admission of the prosecuting witness's allegations. We note simply that the witness's allegations are not the cornerstone of the disciplinary process. Rather, the question of discipline in a case like this turns on the fact of criminal action as evidenced by the criminal conviction, which is by itself an ethical violation regardless of the specifics. And our case law is clear that an *Alford* plea is proof of the fact of the conviction and therefore is sufficient to support disciplining the attorney. *See Kentucky Bar Ass'n v. Haggard*, 57 S.W.3d 300 (Ky.2001); *Kentucky Bar Ass'n v. Taylor*, 549 S.W.2d 508 (Ky.1976). Moreover, the trial commissioner

found that the testimony and other evidence independently established that Martin had committed the ethical violations with which he was charged.

2. Martin also cites disciplinary cases from several other states for the same proposition. While such cases can no doubt be persuasive authority, though perhaps less-so in disciplinary cases than in other areas of the law, they are unnecessary when there is adequate authority in our own case law. Because there is adequate precedent in our case law, we need not address the cases from other states cited by Martin.

ment. He was also given a six-month suspension, probated for two years on the condition that he comply with a variety of conditions related to treatment of alcohol addiction.

Regarding his mental health and addiction issues, Martin notes that his divorce and the deaths of his father, father-in-law, and his mother had significant impacts on his mental health. He also notes that he suffers from depression and obsessive-compulsive disorder with sexual elements, but that he has undergone aggressive treatment since 2001.

Regarding the cases that Martin cites, we note that they differ in several significant respects from his own. To begin with, Martin has two separate convictions, one of which was based on acts occurring after the final judgment and sentencing for the other. We agree with the trial commissioner's assessment that this indicates a pattern of conduct, rather than an isolated incident. More importantly, however, we note that Martin's crimes, unlike those in the cases he cites, were directly related to his law practice. One of the victims was an employee in his law office, and the other was a client who was seeking legal advice about her disabled son. Again, we agree with the trial commissioner's characterization of the effect of these aspects of Martin's crimes: they demonstrate an inappropriate leverage of power and authority over his victims related to his law practice. In this respect, Martin's crimes reflect very poorly on the profession as a whole.

We are persuaded that Martin's behavior is more like that in some of the cases cited by the KBA. *See Bowling v. Kentucky Bar Ass'n*, 971 S.W.2d 294 (Ky.1998)

(nine-month suspension for one count of fourth-degree assault, four counts of terroristic threatening, two counts of unlawful imprisonment, and one count of second-degree wanton endangerment); *Kentucky Bar Ass'n v. McKinney*, 900 S.W.2d 605 (Ky.1995) (six month suspension for misdemeanor fourth-degree assault conviction).[3] If anything, Martin's behavior is worse than that in those cases since his was the result of a pattern of conduct and involved the victimization of a woman working in his law practice and a client. This makes his violations particularly egregious.

While Martin is correct that those cases do not involve addiction or other mental health issues, whereas the cases he cites do, that consideration does not control the decision to impose discipline. We are also cognizant of the ABA guidelines that he cites which counsel in favor of granting probation when the ethical lapse is related to a mental health disorder that can be corrected or treated medically. Had the ethical violations Martin committed been less egregious, i.e., not directly related to his law practice or less than criminal, we might be persuaded that probation or a lesser sanction would be appropriate. However, Martin's unfortunate mental health issues, even when combined with his efforts to seek treatment and to control his behavior, simply do not counteract the fact that he victimized a law-office employee and a client by means of criminal behavior. This leads us to conclude that a substantive sanction is in order.

Based on the foregoing discussion, we elect to review the decision of the Board pursuant to SCR 3.370(8). However, the reasons offered by Martin for a reduction in the proposed sanction are not compel-

---

**3.** However, we do not rely on those cases cited by the KBA where the attorney was convicted of a felony, *e.g.*, *Kentucky Bar Ass'n v. Wessell*, 766 S.W.2d 628 (Ky.1989), as such cases are substantively different from those involving misdemeanor convictions. *See* SCR 3.166 (requiring automatic suspension when an attorney is convicted of a felony).

ling. In fact, because we find that Martin's behavior was so egregious, we conclude that the Board's recommended sanction is insufficient.

ACCORDINGLY, IT IS HEREBY ORDERED:

(1) Sheridan Martin is suspended from the practice of law in Kentucky for a period of two years. The period of suspension shall commence on the date of entry of this Order.

(2) Martin's reinstatement to the practice of law, should he seek it after his period of suspension, is conditioned on his continued, good-faith participation in appropriate psychological and/or psychiatric treatment for his diagnosed mental conditions during his period of suspension. Should Martin be reinstated to the practice of law, he will be subject to any forward-going requirements related to continued treatment and in-office safeguards and monitoring by the KBA (such as those currently in place) recommended by the Character and Fitness Committee.

(3) In accordance with SCR 3.450, Martin is directed to pay all costs associated with these disciplinary proceedings against him, said sum being $4,973.58, for which execution may issue from this Court upon finality of this Opinion and Order.

(4) Pursuant to SCR 3.390, Respondent shall, within ten (10) days from the entry of this Opinion and Order, notify all clients in writing of his inability to represent them, and notify all courts in which he has matters pending of his suspension from the practice of law, and furnish copies of said letters of notice to the Director of the Kentucky Bar Association.

All concur.

ENTERED: November 22, 2006

/s/ Joseph E. Lambert

Chief Justice